# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2795/07-1442

_____

Radfan Saleh Awad,      *
     *
        Petitioner,      *
     *     Petition for Review of a
     v.      *     Final Decision of the Board
     *     of Immigration Appeals.
Alberto Gonzales, Attorney      *
General of the United States of      *
America,      *
     *
        Respondent.      *

_____

Submitted: May 16, 2007
Filed: July 20, 2007

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Radfan Awad, a legal permanent resident, was found to be removable by an immigration judge (IJ) after he was convicted of a misdemeanor firearm offense. The Board of Immigration Appeals (BIA) affirmed the removal. We affirm the BIA's decision and deny the petition for review.

## I. *Background*

Awad, a native of Ethiopia and a citizen of Djibouti, legally entered the United States in 1993 and became a permanent legal resident in 2003.[1] Awad, a sport hunter lawfully hunting, was stopped by a Minnesota Department of Natural Resources officer in November 2005 while driving his all-terrain vehicle. Awad carried a loaded firearm—a 300 Ultra Magnum Remington bolt-action hunting rifle. The officer issued Awad a citation for Transportation of a Loaded Firearm, in violation of Minnesota Statute § 97B.045. Awad paid the $100 fine for the offense and received a misdemeanor conviction.[2]

Subsequently, Awad was charged with being removable under § 237(a)(2)(C) of the INA.[3] This section provides for the removal of any alien who has been convicted under any law of, among other things, owning, possessing, or carrying any firearm defined under 18 U.S.C. § 921(a). The IJ found Awad removable as charged, concluding that the conviction under Minnesota Statute § 97B.045 was a conviction covered by INA § 237(a)(2)(C), despite being a misdemeanor conviction for the violation of a game and fish regulation. The IJ ordered Awad removed to Djibouti.

---

[1]In granting Awad's adjustment of status in 2003, the IJ also granted Awad a waiver of inadmissibility under § 212(I) of the Immigration and Nationality Act (INA) for Awad's 1996 conviction for carrying a pistol without a permit.

[2]Awad had also received a citation from the same Department of Natural Resources officer on November 30, 2003, for Transportation of a Loaded Firearm. That citation also resulted in a misdemeanor conviction. Although both the 2003 and 2005 convictions were considered by the IJ in finding Awad removable, the 2003 conviction has since been vacated. Thus, we address Awad's removability only with respect to the 2005 conviction.

[3]8 U.S.C. § 1227(a)(2)(C)

The BIA affirmed the IJ's decision and dismissed the appeal, finding that the conviction fell within the broad category of firearm convictions covered by INA § 237(a)(2)(C). In making this determination, the BIA rejected Awad's argument that his conviction fell outside the scope of INA § 237(a)(2)(C) because his hunting rifle fell within the sporting exception to the definition of a firearm under § 921(a). The BIA concluded that the sporting exception was limited to the definition of "destructive devices" under § 921(a)(4) and that it did not apply to the definition of firearms under § 921(a)(3).

Awad filed a petition for review and a motion for stay of removal with this court on July 7, 2006. We granted the stay pending this appeal. On appeal, Awad argues that the BIA erred in finding him removable under INA § 237(a)(2)(C) because his use of the hunting rifle fell under the sporting, recreational, or cultural purposes exception to § 921(a)'s definition of a "firearm." Awad also contends that the BIA committed numerous errors that violated his procedural due process rights.

## II. *Discussion*

"This court reviews for substantial evidence the factual findings underlying the BIA's denial of an appeal. Those findings must be upheld if they are supported by reasonable, substantial, and probative evidence, based on the record as a whole." *Negele v. Ashcroft*, 368 F.3d 981, 982 (8th Cir. 2004). The BIA's legal determinations are reviewed de novo, "according substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Id.*

Awad was found to be removable under INA § 237(a)(2)(C) as a result of his misdemeanor conviction for transportation of a loaded firearm, in violation of

Minnesota Statute § 97B.045.[4] Section 237(a)(2)(C) of the INA, entitled "Certain firearm offenses," states:

> Any alien who at any time after admission is *convicted under any law* of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) *in violation of any law* is deportable.

*Id.* (emphasis added).

In interpreting INA § 237(a)(2)(C), the BIA construed "convicted under any law" to include a misdemeanor conviction for a game and fish law violation. *See* Minn. Stat. § 97A.301(4) (stating that failure to comply with a game and fish law is a misdemeanor). Other courts have interpreted INA § 237(a)(2)(C) broadly as well. *See Valerio-Ochoa v. INS*, 241 F.3d 1092, 1095 (9th Cir. 2001) ("From a plain reading of [INA § 237(a)(2)(C)], it is clear that Congress intended to embrace the entire panoply of firearms offenses."); *Hall v. INS*, 167 F.3d 852, 855 (4th Cir. 1999) ("[INA § 237(a)(2)(C)'s] comprehensive list of gerunds captures all varieties of conduct relating to firearms transactions. . . . This wide-ranging text evinces an expansive purpose—to render deportable those aliens that commit firearms offenses of any type."). We give substantial deference to the BIA's interpretation of INA § 237(a)(2)(C). *Negele*, 368 F.3d at 982. Applying that standard, we find no error in the

---

[4]Minn. Stat. § 97B.045, entitled "Transportation of Firearms," states: "A person may not transport a firearm in a motor vehicle unless the firearm is: (1) unloaded and in a gun case expressly made to contain a firearm, and the case fully encloses the firearm by being zipped, snapped, buckled, tied, or otherwise fastened, and without any portion of the firearm exposed; (2) unloaded and in the closed trunk of a motor vehicle; or (3) a handgun carried in compliance with sections 624.714 and 624.715."

BIA's determination that Awad's misdemeanor game and fish conviction for the illegal transportation of a loaded firearm was a deportable violation.

This case turns on the definition of a "firearm" in 18 U.S.C. § 921(a). Section 921(a)(3) defines a "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

Awad's hunting rifle is a "firearm" as that term is defined in § 921(a)(3)(A)—a weapon designed to expel a projectile by the action of an explosive. In reaching this conclusion, we reject Awad's argument that Congress excluded his hunting rifle from the definition of a firearm under the "sporting, recreational or cultural purposes" exception for rifles set forth in § 921(a)(4).

We hold that the BIA's construction of the Act limiting the sporting, recreational, or cultural purposes exceptions to destructive devices is reasonable and entitled to deference. The terms "firearm" and "destructive device" are separately defined in their own subsections, with only the destructive device definition containing a sporting-rifle exception. *See* § 921(a)(4).[5] As stated above, § 921(a)(3)

---

[5]Section 921(a)(4) defines a "destructive device" as:

(A) any explosive, incendiary, or poison gas--
    (I) bomb,
    (ii) grenade,
    (iii) rocket having a propellant charge of more than four ounces,
    (iv) missile having an explosive or incendiary charge of more than

defines a "firearm" in four ways: "(A) any weapon (including a starter gun) which . . . is designed to . . . expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; *or* (D) any destructive device." (emphasis added). Because the definition uses the disjunctive term "or" instead of the conjunctive "and," a weapon only has to meet one of the four definitions to be a "firearm" under § 921(a)(3). As destructive devices are a

> one-quarter ounce,
> (v) mine, or
> (vi) device similar to any of the devices described in the preceding clauses;
>
> (B) *any type of weapon* (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known *which will, or which may be readily converted to, expel a projectile by the action of an explosive* or other propellant, *and which has any barrel with a bore of more than one-half inch in diameter*; and
>
> (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.
>
> *The term "destructive device" shall not include* any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is *a rifle which the owner intends to use solely for sporting, recreational or cultural purposes*.

(emphasis added).

subcategory of firearms, all destructive devices are firearms, *see* § 921(a)(3)(D), but not all firearms are destructive devices. *See* § 921(a)(4)(B).

We note that the Seventh Circuit reached a different conclusion in *Lemus-Rodriguez v. Ashcroft*, 350 F.3d 652 (7th Cir. 2003). In *Lemus-Rodriguez*, the defendant had been convicted of attempted reckless discharge of a firearm for firing a rifle into the air on New Year's Eve. *Id.* at 653. The defendant argued that because the definition of a destructive device in 18 U.S.C. § 921(a)(4) includes "any type of weapon . . . which will . . . expel a projectile," the definition includes a rifle, except "a rifle which the owner intends to use solely for sporting, recreational or cultural purposes." *Id.* at 653–54. As such, the defendant argued that he came within the sporting, recreational or cultural purposes exception because firing a rifle into the air to celebrate New Year's Eve was pursuant to a "cultural purpose." *Id.* at 654. The Seventh Circuit determined that even though a "firearm" is defined without reference to the sporting, recreational or cultural purpose exceptions, the definition of "destructive device" "include[s] a firearm unless it is a rifle used for one of the approved purposes." *Id.* at 655. Thus, the court found that the defendant was not barred from claiming that his use of the rifle had a cultural purpose, however the court ultimately denied the defendant's claim after finding that his use of the rifle was not cultural. *Id.*

As we read the statute, the definition of "destructive device" does not necessarily "include a firearm unless it is a rifle used for one of the approved purposes." For a firearm to be a destructive device, the firearm's barrel must have a bore diameter greater than one-half inch. 18 U.S.C. § 921(a)(4)(B). This bore diameter requirement excludes many firearms from also constituting a destructive device.[6]

---

[6]At oral argument, we questioned whether Awad's rifle had a barrel bore greater than one-half inch in diameter, and granted Awad's counsel permission to submit documentation, post-argument, regarding the barrel's bore size. The government

Thus, a firearm with a barrel bore one-half inch in diameter or less is not a destructive device, even if the firearm does not fall within the sporting, recreational or cultural purposes exception. Conversely, a rifle that is not a destructive device—such as a rifle used solely for sporting, recreational, or cultural purposes or a rifle with a barrel bore diameter of one-half inch or less—is still a firearm. Therefore, Awad's rifle is a "firearm" under 18 U.S.C. § 921(a)(3); it is not excepted from that definition by the sporting rifle exception for destructive devices; and Awad's misdemeanor conviction for illegally transporting the firearm made him removable under the broad language of INA § 237(a)(2)(C).

We also reject Awad's due process claims, as these claims do not identify a fundamental procedural error or that such error resulted in prejudice. *See Al Khouri v. Ashcroft*, 362 F.3d 461, 466 (8th Cir. 2004). To the contrary, Awad principally reiterates his disagreement with the IJ's and BIA's determinations against him.

### III. *Conclusion*

The BIA did not err in affirming the IJ's decision finding Awad removable under INA § 237(a)(2)(C). Accordingly, the petition for review is denied.

—————————————————

objected to the post-argument documentation provided, arguing that we lacked jurisdiction to consider it. We note, without discussion of the issue, that the documentation provided lists the rifle barrel's bore diameter as .308 inches—less than one-half inch.