**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERTO CAMACHO GIL,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 08-74371

Agency No.
A095-697-552

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 7, 2011—Pasadena, California

Filed June 22, 2011

Before: Pamela Ann Rymer, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan;
Partial Concurrence and Partial Dissent by Judge Rymer

## COUNSEL

Maziar Razi, Claribel E. Palacios (argued), Law Offices of Mike Razi, PC, Los Angeles, California, for petitioner Robert Camacho Gil.

Tony West, Assistant Attorney General, Luis E. Perez, Senior Litigation Counsel, Joseph D. Hardy, Trial Attorney, Blair T. O'Connor (argued), Assistant Director, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D. C., for respondent Eric H. Holder Jr., Attorney General.

## OPINION

CALLAHAN, Circuit Judge:

Roberto Gil challenges a decision of the Board of Immigration Appeals ("BIA") denying him cancellation of removal and voluntary departure. He asserts that the BIA erred in (1) determining he was ineligible for cancellation of removal because his conviction for carrying a concealed weapon under California Penal Code § 12025(a) did not constitute a removable firearms offense under 8 U.S.C. § 1227(a)(2)(C); and (2) denying him voluntary departure because this denial was based on his criminal conviction under California Penal Code § 12025(a) and that conviction did not render him ineligible for voluntary departure. We reject these arguments and affirm.

I

Gil is a native and citizen of Mexico. He unlawfully entered the United States in November of 1990. On December 10, 2004, Gil pleaded no contest to carrying a weapon concealed within a vehicle in violation of California Penal Code Section 12025(a), a misdemeanor. Two weeks later, Gil was served with a Notice to Appear, alleging that he was removable due to being present in the United States illegally in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).

At a merits hearing on May 22, 2007, an Immigration Judge ("IJ") found that Gil was statutorily ineligible for cancellation of removal because his conviction under California Penal Code § 12025(a) constituted a firearms offense under 8 U.S.C. § 1227(a)(2)(C). The IJ stated that because of this offense, Gil was "ineligible" for voluntary departure, and also that she was denying voluntary departure "as a matter of discretion because of [Gil's] firearm conviction."

Gil appealed the IJ's decision to the BIA. On September 18, 2008, the BIA dismissed Gil's appeal and affirmed the

IJ's denial of his application for cancellation of removal under 8 U.S.C. § 1229b(b). The BIA also affirmed "the IJ's decision denying [Gil's] application for voluntary departure in the exercise of discretion. . . [because] [o]n appeal, [Gil] has not come forward with any countervailing equities or favorable factors demonstrating reversible error in the IJ's decision." Gil timely filed a petition for review with this court.

## II

Regarding Gil's first claim, we review the BIA's legal determinations regarding an alien's eligibility for cancellation of removal de novo. *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006). "Federal courts afford the BIA substantial deference when the BIA interprets a statute that it is charged with administering," *Malilia v. Holder*, 632 F.3d 598, 602 (9th Cir. 2011) (internal citations omitted). However, "federal courts owe no deference to the BIA's interpretation of a criminal statute." *Id.* (internal citations omitted).

The parties dispute whether we have jurisdiction to consider Gil's second claim. The Illegal Immigration Reform and Immigrant Responsibility Act "abolished [our] authority to review discretionary grants and denials of voluntary departure." *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1170 (9th Cir. 2003); *see* 8 U.S.C. § 1229c(f). However, we have jurisdiction to review questions of law regarding voluntary departure. *Ramadan v. Gonzales*, 479 F.3d 646, 653 (9th Cir. 2007). We review such questions de novo. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004).

"If the BIA issues a written opinion, it is that opinion which is under review." *Morgan v. Mukasey*, 529 F.3d 1202, 1206 (9th Cir. 2008) (internal citation omitted). However, "[t]o the extent the [BIA] incorporates the [IJ's] decision as its own, [we] review both the decisions of the [BIA] and the IJ." *Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008) (internal quotation omitted).

### III

**[1]** A nonpermanent resident alien is statutorily ineligible for cancellation of removal if he or she has been convicted of an offense under § 1227(a)(2). 8 U.S.C. § 1229b(b)(1)(C). Gil contends that the BIA erred in holding that he was statutorily ineligible for cancellation of removal because California Penal Code § 12025(a) criminalizes more conduct than is covered by the definition of "firearms offense" in 8 U.S.C. § 1227(a)(2)(C), and therefore his conviction under § 12025(a) does not render him ineligible for cancellation of removal under § 1227(a)(2)(C). Under the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), we "compare[ ] the state statute of conviction with the federal generic definition of the same crime." *United States v. Velasquez-Bosque*, 601 F.3d 955, 957 (9th Cir. 2010) (citing *Taylor*, 495 U.S. at 602). Here, the state statute of conviction, California Penal Code § 12025(a), provides:

> (a) A person is guilty of carrying a concealed firearm when he or she does any of the following:
>
> > (1) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.
> >
> > (2) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person.
> >
> > (3) Causes to be carried concealed within any vehicle in which he or she is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

Cal. Penal Code § 12025(a). Meanwhile, the federal statute, 8 U.S.C. § 1227(a)(2)(C), provides:

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

8 U.S.C. § 1227(a)(2)(C).

**[2]** Gil contends that § 1227(a)(2)(C) is not broad enough to encompass certain offenses committed under § 12025(a)(3), which criminalizes conduct where a defendant "causes [a concealed firearm] to be carried." *See* Cal. Penal Code § 12025(a). Specifically, Gil notes that a state court has said, in regard to § 12025(a)(3), that "it is theoretically possible for a person to cause to be concealed a firearm that is not in his or her possession, custody, or control, such as by conduct that conceals from view a firearm that is in the possession and control of another person." *People v. Padilla*, 98 Cal. App. 4th 127, 138 (2002). Based on *Padilla*, Gil asserts that a person could be convicted under § 12025(a)(3) without having either carried or possessed a firearm. Thus, he argues, the state offense does not categorically fall within § 1227(a)(2)(C).

**[3]** However, § 1227(a)(2)(C) is not as limited as Gil contends. We have stated that "[f]rom a plain reading of [§ 1227(a)(2)(C)], it is clear that Congress intended to embrace the entire panoply of firearms offenses." *Valerio-Ochoa v. INS.*, 241 F.3d 1092, 1095 (9th Cir. 2001). We further explained that

> [§ 1227's] comprehensive list of gerunds captures all varieties of conduct relating to firearms transactions. It includes inchoate as well as completed offenses, enumerating not only the sale, use, ownership, or possession of firearms, but also any attempt or conspiracy to do so. Finally, it encompasses convictions "under any law" of engaging or attempting to engage in such transactions. This wide-ranging text evinces an expansive purpose—to render deportable those aliens that commit firearms offenses of any type.

*Id.* (quoting *Hall v. INS*, 167 F.3d 852, 855 (4th Cir. 1999)). In other words, the generic offenses listed in § 1227(a)(2)(C) (such as "carrying" or "possessing" a firearm) should be interpreted as broadly as possible, so as to cover "firearms offenses of any type." *See id.*

Indeed, we previously rejected an argument similar to the one Gil makes here. In *Malilia v. Holder*, an alien argued that his conviction for "improper delivery of a firearm" did not fall within the ambit of § 1227(a)(2)(C) because § 1227(a)(2)(C) does not list "delivery" as a separate offense. 632 F.3d at 602. We rejected that argument as relying on an overly narrow reading of the federal statute and reiterated that § 1227(a)(2)(c)'s "repetitive use of unqualified language demonstrates Congress' intent to embrace the panoply of firearms offenses." *Id.* at 603 (citing *Valerio-Ochoa*, 241 F.3d at 1095). Moreover, we reasoned that, construed broadly, possession of a firearm need not mean actual possession, but can include any "exercise of dominion or control," *id.* at 603, and delivery of a firearm logically includes some aspect of dominion or control over the firearm. *See id.* at 603-04.

**[4]** Gil similarly argues that because § 12025(a) uses the phrase "cause to be carried," it is broader than § 1227(a)(2)(C) because the federal statute criminalizes carrying a firearm and possessing a firearm but does not make it a separate offense to "cause [a firearm] to be carried." But

*Malilia* states that we should reject an overly narrow reading of the federal statute. Construed broadly, as *Malilia* requires, a person who causes a firearm to be carried concealed in a car in which he is an occupant has constructively carried the firearm or demonstrated sufficient dominion and control over the firearm to have possessed it. In situations where there is an agreement between a person with physical possession of the firearm and the defendant that the firearm is to be carried concealed, the crime may also qualify as a conspiracy offense, which is expressly included within the scope of § 1227(a)(2)(C).

**[5]** Nor does *Padilla*'s statement that "it is theoretically possible for a person to cause to be concealed a firearm . . . by conduct that conceals from view a firearm that is in the possession and control of another person," 98 Cal. App. 4th at 139, alter our analysis. First, as explained above, such conduct falls within the ambit of § 1227(a)(2)(C). Second, Gil has not cited any case where a defendant was actually prosecuted for the conduct described in *Padilla*, and we must be guided by the Supreme Court's admonition that "find[ing] that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language." *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As the Court explained, the defendant must point to "a realistic probability, *not a theoretical possibility*, that the State would apply its statute to conduct that falls outside the generic definition of a crime," which requires that he "at least point to his own case or other cases" in which the state court has so applied the statute. *Id.* (emphasis added). Given that we must interpret § 1227(a)(2)(c) as broadly as possible, and given that *Padilla*'s hypothetical was what the state court itself called a "theoretical possibility," not an example of an actual prosecution, we conclude that § 12025(a) falls within the bounds of § 1227(a)(2)(C). Accordingly, under the categorical approach, a conviction under California Penal Code § 12025(a) constitutes a firearms offense under 8 U.S.C. § 1227(a)(2)(C).

IV.

**[6]** Gil also contends that § 12025(a) is broader than § 1227(a)(2)(C) because § 1227(a)(2)(C) excludes antique firearms from its definition of a firearm and § 12025(a) does not.[1] He cites *Matter of Mendez-Orellana*, 25 I&N Dec. 254 (BIA 2010), where the BIA held that the antique firearm exception is an affirmative defense to removability under § 1227(a)(2)(C). *See id.* at 255-56. The holding in *Mendez-Orellana* does not support Gil's claim for relief. Under the categorical approach, we "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether the offense satisfies the generic definition. *Taylor*, 495 U.S. at 602. In doing so, we have held that "we consider only the statutory elements of the offense." *United States v. Asberry*, 394 F.3d 712, 715 (9th Cir. 2005). Accordingly, in conducting the categorical analysis, we do not consider the availability of affirmative defenses; the fact that there may be an affirmative defense under the federal statute, but not under the state statute of conviction, does not mean that the state conviction does not fall categorically within the federal statute.[2] In *United States v. Velasquez-Bosque*, 601 F.3d 955, 963 (9th Cir. 2010), we held that "[t]he availability of an affirmative defense is not relevant to the categorical analysis."[3] Thus,

---

[1]The firearms offense statute, § 1227(a)(2)(C), refers to 18 U.S.C. § 921(a) for the definition of "firearm." Subsection 3 of § 921(a) states that a firearm, under the statute, "does not include an antique firearm."

[2]Here, Gil did not argue that the firearm at issue actually was an antique firearm. Accordingly, we need not decide whether an actual showing of an affirmative defense might take a case out of the categorical approach and require application of the modified categorical approach.

[3]Consistent with this holding, every other circuit of which we are aware that has considered the § 921(a)(3) "antique firearm" exception in the criminal context, has treated it as an affirmative defense rather than an element of the crime. *See United States v. Lawrence*, 349 F.3d 109, 122 (3d Cir. 2003); *United States v. Smith*, 981 F.2d 887, 891-92 (6th Cir. 1992); *United States v. Laroche*, 723 F.2d 1541, 1543 (11th Cir. 1984); *United States v. Mayo*, 705 F.2d 62, 73-76 (2d Cir. 1983); *see also United States v. Washington*, 17 F.3d 230, 232 (8th Cir. 1994).

*Matter of Mendez-Orellana* does not alter our conclusion that a conviction under Cal. Penal Code § 12025(a) categorically constitutes a removable firearms offense under 8 U.S.C. § 1227(a)(2)(C).

## V

**[7]** Gil also contends that the BIA erred in denying him voluntary departure because the denial was based solely on the incorrect belief that Gil's conviction rendered him statutorily ineligible for voluntary departure. This contention is belied by the record. The IJ stated that "considering [Gil's] alternate application for relief for voluntary departure[,] I find because of his criminal offense that he is also ineligible for that and I would *deny it as a matter of discretion* because of his firearm conviction." (emphasis added). Moreover, the BIA "affirm[ed] the [IJ]'s decision denying the respondent's application for voluntary departure *in the exercise of discretion*," and made no mention of the IJ's alternative finding that Gil was ineligible for voluntary departure. (emphasis added). Our review is limited to the ground adopted by the BIA. *See De la Cruz v. INS*, 951 F.2d 226, 228 & n.3 (9th Cir. 1991). Accordingly, because the BIA affirmed based on the IJ's discretionary denial, we do not have jurisdiction to review Gil's challenge to the denial of voluntary departure.[4] *See* 8 U.S.C. § 1252(a)(2)(B)(i).

---

[4]Gil contends that *In re Dillingham*, 21 I&N Dec. 1001, 1006 (BIA 1997), *reversed on other grounds by Dillingham v. INS*, 267 F.3d 996 (9th Cir. 2001), supports his claim for relief because it held that the immigration court cannot base a discretionary denial of voluntary departure on a conviction that does not itself make an individual statutorily ineligible for voluntary departure. In *Dillingham*, the BIA determined that the IJ "erroneously found the respondent ineligible for voluntary departure 'due to the nature of his conviction.' " *Id.* at 1006. The BIA further stated, "we reject the Service's argument on appeal that we should deny the respondent's application for voluntary departure in the exercise of discretion because of his drug conviction." In other words, the BIA declined to deny voluntary departure to the alien based solely on his prior conviction, but it did not

## VI

In conclusion, we hold that a conviction under California Penal Code § 12025(a) is categorically a "firearms offense" under § 1227(a)(2)(C). Thus, the BIA properly held that Gil was statutorily ineligible for cancellation of removal. We dismiss Gil's second ground for appeal because we find that the BIA's denial of voluntary departure was a matter of discretion and we lack jurisdiction to review such a discretionary decision.

## DENIED IN PART AND DISMISSED IN PART.

RYMER, Circuit Judge, concurring in part and dissenting in part:

I agree we lack jurisdiction to consider the BIA's discretionary denial of voluntary departure. I part company with respect to whether California Penal Code § 12025(a) categorically constitutes a firearm offense under 8 U.S.C. § 1227(a)(2)(C). Informed by California's interpretation of its

hold that such a conviction *could not* serve as the basis for a valid discretionary denial of voluntary departure.

*Dillingham* does not support Gil's claim to relief. In *Dillingham*, the BIA specifically held that despite respondent's 13-year-old British conviction for possession of a small amount of marijuana and cocaine, he remained "eligible for voluntary departure." *Id.* Here, the BIA first affirmed the IJ's determination that Gil's state conviction was for a firearms offense and that accordingly he was ineligible for cancellation of removal. Second, bypassing the IJ's alternate holding that the conviction rendered him ineligible for voluntary departure, the BIA affirmed the IJ's *discretionary* denial of voluntary departure because Gil had failed to present "any countervailing equities or favorable factors supporting voluntary departure." *Id.* Nothing in *Dillingham* supports Gil's contention that a prior conviction cannot be considered by the BIA in its discretionary determination to deny voluntary departure.

own statute, section 12025(a)(3) covers conduct that does not involve possession, custody, or control over the firearm. *See People v. Padilla*, 98 Cal. App. 4th 127, 138 (2002). The federal statute, on the other hand, covers conduct, such as possession or carry, that manifests control over a firearm. Even constructive possession requires some control over the firearm. *See United States v. Thongsy*, 577 F.3d 1036, 1041 (9th Cir. 2009); *People v. Mejia*, 72 Cal. App. 4th 1269, 1272 (1999).

While we must be careful not to engage in "legal imagination" when construing a state statute, here, *Padilla* held that § 12025 covers conduct broader than custody or control over a firearm in order to sustain the defendant's conviction. This reading of the statute is based not on legal imagination but on a state court's application of the statute in an actual case. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Because the conviction documents in the record do not clearly establish that Gil's conduct fell within the ambit of § 1227(a)(2)(C), I would grant the petition and remand to the BIA to determine Gil's eligibility for cancellation of removal aside from his conviction. *See Young v. Holder*, 634 F.3d 1014, 1020 & n.4 (9th Cir. 2011); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1133-35 (9th Cir. 2006) (en banc).[1]

---

[1]Because I would grant the petition on this basis, I would not reach the issue of whether the antique firearms exception to § 1227(a)(2)(C) renders it narrower than § 12025(a).